No. 57.—WILEY BRYANT, Guardian, &c., and ALLEN BEALL, executor of JESSE PYE, deceased, plaintiffs in error, *vs.* LITTLEBERRY OWEN and WIFE, defendants in error.

The entry of "*parties made*" on the motion docket, in a case where a *scire facias*, to make parties, has been issued, and returned *executed*, is insufficient to make the representatives of the deceased plaintiff, or defendant, parties in the cause.

In such case, there must be a judgment of the court rendered, and entered upon the minutes, before the representatives of the deceased party can be compelled to appear or answer as parties in the cause.

The motion docket is not a record; the entries upon it are mere memoranda for the judge, kept by him for his own convenience.

An execution, issued from a decree of a court of equity against a guardian individually, upon a bill filed against him as guardian, charging him with waste, and seeking to render him liable in his individual, and not in his representative character, and the execution returned *nulla bona*, is admissible in evidence, in a suit upon the guardian's bond against the security.

A guardian's bond is not an office paper of the Superior Court, but of the Court of Ordinary, where the law deposits it. In a suit upon such bond, the party is not entitled to the custody of the orginal, but to a certified copy only. A copy of such bond, when the original is lost or destroyed, pending the suit, cannot be established under the 49th rule of practice of the superior courts.

Bryant, Guardian, &c. and Beall, Ex'r. of Pye, vs. Owen and Wife.

A decree against the guardian is only *prima facie* evidence of a devastavit, as against the security, not conclusive. It is subject to be rebutted by counter-testimony in behalf of the security, who will be permitted to inquire, *ab origine*, into the justice of the decree.

The Court of Ordinary, under the act of 1805, has power to discharge the security of a guardian; in the exercise of which power, the law presumes that the court will so act as not to injure, but to protect, the rights of the ward. A security so discharged is released from *all future*, but not from *any* past, liability. If new security is given, he is bound for the future management of the ward's estate, and also, equally with the discharged security, for any past liability of the guardian.

In a case where the decree against the guardian is silent as to the *time when* the devastavit by him took place, and where the security was discharged by the Court of Ordinary before the commencement of the suit in equity, in which the decree was rendered, the decree *alone* is insufficient to charge the security in a suit against him upon the guardian's bond. *Aliter* where the security has not been discharged.

This was an action of debt upon a guardian's bond, brought in Merriwether Superior Court, by the justices of the Inferior Court of Putnam county, as a Court of Ordinary for the use of the defendants in error, against Wiley Bryant and Jesse Pye, the said Jesse being then in life, as the surviving obligor in said guardian's bond, (Littleberry Perdew, the other co-obligor, having died before the commencement of the suit.) The plaintiff in error, Wiley Bryant, on the 9th day of Jan. 1826, was appointed guardian of the person and property of the defendant in error, Orra Ann, then Orra Ann Weathers, minor and orphan of Jesse Weathers, deceased, and gave the bond sued on, with Jesse Pye and Littleberry Perdew as his securities.

In addition to the general breach of the conditions of the bond alleged in the declaration, it was specially set forth and alleged, as a further breach, that the defendants in error had filed their bill for discovery, relief and account, against the said guardian on the chancery side of the Superior Court of said county of Merriwether, and in the year eighteen hundred and thirty-eight, obtained a decree for the sum of sixteen hundred and forty-three dollars and thirty-six cents, and cost of suit, and ordering an execution to issue in terms of the law, in case of default of payment of the decree, and that execution was accordingly issued, and returned *nulla bona;* and alleging further, that said Wiley Bryant was wholly insolvent, and unable to pay, and had not paid the amount of said decree or execution, or any part thereof.

The plaintiff in error, Jesse Pye, the security, pleaded that on the 3d day of June, 1833, long before the commencement of said suit in equity, he was, by the Inferior Court, sitting for ordinary purposes, of the county of Putnam, in pursuance of the authority vested in said court by statute, by order of said court discharged and released from liability on said guardian's bond, and the said Wiley was then and there required to give other security.

Upon the first trial, judgment was confessed by the said Pye and the other defendant, reserving the right of appeal, and an appeal was accordingly taken. Afterwards, on the appeal trial, a verdict was rendered in favor of the plaintiffs in error, and a new trial moved for on the part of the defendants in error. Pending the motion for new trial, Jesse Pye died; and a writ of *scire facias* was sued out for the pur-

pose of making Allen Beal, executor of said Pye, a party, and was served upon him, and an entry was made on the motion docket of "parties made," but no order to that effect was entered upon the minutes of the court. The counsel for the plaintiff in error resisted the granting of a new trial in said cause. At August Term, 1844, of the court below, said cause again came on to be tried, when, on the part of the plaintiff in error, it was objected that the executor of Pye had not been made a party defendant in said cause, in conformity with the statute in such cases provided, which was overruled by the court below, and the trial proceeded. The counsel for the defendants in error were permitted to establish *instanter*, under the 49th rule of court, a copy of the bond sued on, upon the statement of the clerk and counsel that the same had been in the office, and could not then be found; and offered to read in evidence the copy so established, which was objected to, and the objection overruled, and the established copy was admitted in evidence. The counsel for the defendants in error then read in evidence the record of the proceedings in equity against Bryant, the guardian, and the decree rendered thereon: and then offered in evidence the execution issued from said decree, which had issued against the guardian in his individual, and not in his representative character, with the return of *nulla bona* thereon: to which the counsel for the plaintiffs in error objected, and the objection was overruled. The testimony on the part of the defendants in error was here closed.

The counsel for the plaintiffs in error then offered and read in evidence the record of the discharge, by the Court of Ordinary of Putnam county, of said Jesse Pye, as alleged in his plea, long previous to the commencement of said suit in equity. The counsel for the plaintiffs in error then offered a witness, Vardeman, to prove that Bryant was solvent, having considerable property, to wit: a lot of land and negro in his possession after he came to Merriwether county aforesaid, subsequent to the discharge of the security, Pye, which, being objected to, was overruled and rejected, and the witness was not permitted to testify.

The testimony having closed, after argument of counsel, the court below charged the jury, that the decree against Bryant, the guardian, in the suit calling upon him to account, as guardian, was conclusive on the security as to all sums received before the discharge, which had not been accounted for; and if the money or effects of the ward came into the hands of the guardian, before the discharge of the security, and had not been accounted for, then they must find a verdict for the defendants in error, who were the plaintiffs below. And that the charge of waste, had relation back to the time the money or effects of the ward were received by the guardian, and the security was liable for the amount of such money and effects unaccounted for; and no other evidence of waste by the guardian was necessary to charge the security, other than the reception of such effects by the guardian before the discharge of the security, provided said guardian had failed to pay over or account for the same. The jury, under this charge, and the evidence submitted, rendered a verdict for the defendants in error, for the full amount of said decree, with interest and costs. Whereupon the counsel for the plaintiffs in error moved for a new trial, upon the following grounds:

1st. Because there was no order of the court, making the legal repre-

sentatives of Jesse Pye, deceased, a party to said suit, except an entry upon the motion docket.

2d. Because the court erred in permitting the execution against Wiley Bryant, in his individual capacity, to be read as evidence of waste on the part of Wiley Bryant, as guardian.

3d. Because the court erred in permitting a copy of the guardian's bond, taken by the Court of Ordinary of Putnam county, to be established *instanter* as an office paper, and to be read on the trial of said cause ; it appearing, from the statement of the counsel and the clerk, that it had been in the office, and could not be found.

4th. Because the court erred in charging the jury that the decree against Bryant, as guardian, in the suit, calling upon him to account as guardian, was conclusive upon the security as to all sums received before the discharge, which had not been accounted for.

5th. Because the court erred in charging the jury that, if the money or effects of the ward came into the hands of the guardian before the discharge of the security, and had not been accounted for, then they must find a verdict for the plaintiffs below.

6th. Because the court erred in charging the jury that the charge of waste had relation back to the time the money or effects of the ward were received by the guardian ; and the security was liable for the amount of such money and effects unaccounted for ; and no other waste by the guardian was necessary to be shown to charge the security, other than the reception of such effects by the guardian, before the discharge of the security, provided he had failed to pay over or account for the same.

7th. Because the plaintiffs below, in alleging a breach of the bond in their declaration, allege the waste to have been committed by the guardian, Bryant, before the security was discharged ; and there was no evidence showing that the waste was committed by the guardian, before the discharge of the security, other than that afforded by the records read in evidence.

8th. Because the court erred in rejecting the testimony of Vardeman, a witness, who was offered to prove that Bryant was solvent as aforesaid.

9th. Because the verdict of the jury was contrary both to law and evidence.

At February Term, 1846, of the Superior Court of said county of Merriwether, this motion for a new trial came on to be heard before Judge Hill, and after argument of counsel had thereon, the court below overruled the same, deciding against and overruling each of the grounds taken in said motion for new trial. To which the counsel for plaintiffs in error excepted, and assigned error upon each of the grounds taken for a new trial.

OBADIAH WARNER, for the plaintiff in error.

As to the first ground of error :

1st. The legal representative of Pye was, by the judiciary act of 1799, required to be made a party by *scire facias.—Prin. Dig.* 482.

A *scire facias* is a judicial writ, and is considered in law an action. —*Tidd's Prac.* 982.

2d. Parties were not made, until there had been an order or judgment of the court making them so, to the action pending in the court on which the verdict was rendered.

As to the 2d ground:

1st. The *fi. fa.* was read in evidence, to establish waste against Bryant, as guardian. How can execution against Bryant, in his *individual* capacity, and a return of *nulla bona* upon it, establish waste? It might be evidence that he had wasted his own property, or, at least, that he had no *individual property*. But can such an execution, with a return of *nulla bona*, be any evidence that the guardian had wasted the property of his ward? Bryant, as guardian, might have had in hand the entire property of his ward, and the return of *nulla bona* on this *fi. fa.* been correctly made.

2d. The plaintiffs below allege in their declaration, that *Bryant, as guardian,* wasted his *ward's* property, and not his *individual* property. The sheriff could seek after, and levy upon no other property, but the *individual* property of Bryant. This *fi. fa.* with the return upon it, was no evidence that the sheriff had sought after the ward's property in the hands of the guardian, and could find none, and therefore it was wasted by the guardian.—*See Brown* vs. *Hillegas and wife,* 2 *Hill's S. C. Rep.* 449. There is a distinction between property held in one's own right, and property held in *auter droit.*—*Toller's Exors.* 133.

To have afforded evidence of waste by the guardian, the execution should have followed the decree, and issued against Bryant as guardian.

As to the 3d ground of error:

1st. The rule of the Superior Court only authorizes the establishment of such papers *instanter* as are, in contemplation of law, *office papers.* The bond in question was required by law to have been filed in the clerk's office of the Court of Ordinary of Putnam county. A certified copy thereof might have been read in evidence.—*Act of* 1823, *Prin. Dig.* 217.

2d. The fact that the bond had once been in the clerk's office of the Superior Court of Merriwether county, does not alter the question. When it could not be found, the presumption of law was, that it had been returned to the proper office in Putnam county, *where it belonged.* At any rate, search should have been made *there* for it, before *secondary evidence* was admitted.—1 *Greenleaf's Ev.* 623, 624.

3d. The original bond was the *best evidence.* There was, in fact, *no proof* of its destruction: because it had once been in the clerk's office of Merriwether, and could not be found *there,* was *no evidence* of its loss. The bond was not in *that office* by legal authority, and the depositing *it there,* was only a voluntary act of the person placing it there, and he could take it away whenever he might think proper to do so.

As to the 4th ground of error:

1st. From an inspection of the record, it will be seen that Pye, the security, was no *party* to the suit in which the decree was obtained, and had no notice. On the 3d of June, 1833, Pye was discharged from his securityship: on the 13th of July, 1836, three years after his discharge, the bill was filed, calling upon Bryant, the guardian, to account: in March, 1838, nearly five years after the discharge of Pye, the decree was had, which was held, by the court below, conclusive upon the security.

The suit on the guardian's bond was instituted on the 28th of January, 1839. The defendant, Pye, relied for defence on his discharge by the Court of Ordinary of Putnam county. The act of 1805 was a remedial statute, and should be construed liberally.—*Bl. Com.* 87.

2d. The Court of Ordinary had jurisdiction to discharge Pye.—*Prin. Dig.* 237. The judgment of the Court of Ordinary of Putnam county, discharging Pye, was *conclusive upon that point,* in any other court, unless impeachable for fraud and collusion.—1 *Stark. Ev.* 227, 241.

3d. The decree upon its face does not purport to charge the guardian with failing to account for money or effects of the ward, received by him *prior* to the discharge of the security.

4th. The legal effect of the charge to the jury, by the court below, is, to make the security liable to the amount of the decree against the guardian, made several years after his discharge, to which *he was no party, had no notice,* and which does not purport to charge the guardian with any *maladministration* of his ward's effects, during the period Pye was security. Why should the decree be conclusive against Pye, more than against any other person? He was no security when the bill was filed or decree made. So far as the record shows, the guardian was never called on to account, until *after* the discharge of the security. But the decree was not conclusive upon the security.—*See Kip vs. Brigham,* 6 *Johns. Rep.* 158; *Carmack* et. al. vs. *The Commonwealth,* 5 *Binn. R.* 184; 15 *Mass. Rep.* 6; 2 *Hill's S. C. Rep.* 313.

The 5th, 6th, 7th, and 9th grounds of error are considered together.

1st. The reception of the effects of the ward by the guardian was no waste. It was the duty of the guardian, under the law, to have taken possession of them, and it was his duty to keep possession, until his ward arrived at age, married, or until they were demanded by some person authorized by law to receive the property from him.

So far from the reception of the effects of the ward by the guardian being evidence of waste, it would have been a breach of his duty, and a violation of his obligation as guardian, to have refused to take charge of them.

2d. It is the *demand,* and a *failure to account on demand,* when made by a person authorized by law to make it, which constitutes the liability of the guardian. There is no breach of duty until this is done, and no default on his part until such demand is made.—*See Vaughan vs. Evans,* 1 *Hill's Ch. Rep.* 414; *Townsend and Gordon* vs. *Everett,* 6 *Ala. Rep. N. S.* 607; *the Governor* vs. *Robbins, Ala. Rep. N. S.* 79; *the Executors of Moore* vs. *the Treasurer,* 1 *Nott and McCord,* 214; *Wright* vs. *Hamilton,* 2 *Bailey,* 51.

3d. The doctrine is, that the security is bound for the effects of the ward which are wasted by the guardian, while he is security, and the security is only liable for such acts of *maladministration,* by the guardian, which take place while he remains security.

4th. The court below, before whom the cause was tried, says, in its charge to the jury, that no other evidence of waste by the guardian was necessary on the part of the plaintiff, to charge the security, other than the reception of the effects of the ward by the *guardian* before the discharge of the security, provided he had failed to pay over and account for the same.

Bryant, Guardian, &c. and Beall, Ex'r. of Pye, *vs.* Owen and Wife.

The proper interpretation of this part of the charge, and the construction which the jury undoubtedly placed upon it, was, that if the guardian, while Pye was his security, received the effects of the ward, and at any future time, and even though that time may have been after the discharge of Pye, the guardian had failed to account for these effects, this failure to account, at *this future time*, was such waste on the part of the guardian as to make the security liable. Our position is, that it is not sufficient to show the reception of the effects of the ward by the guardian before the discharge of the security, and his failure to account for these effects, *at some subsequent time ;* but that the plaintiffs below must go farther, and show that the guardian failed to account for these effects, to a person legally authorized to call upon him to account, *while* Pye was his security and *before his discharge.*

The court below committed error in law, when it charged the jury, " that a failure to account, at any subsequent time, was waste on the part of the guardian, and *related back* to the *time* when he received the property of his ward."

The doctrine of relation is a legal fiction ; that is, " where one thing is done to day, is considered as done on a preceding day."—1 *Bouvier's Law Dic.* 564. It is only resorted to in cases of necessity for purposes of justice.—1 *John. Ch. Rep.* 297. Chancellor Kent says : " that it is a general principle of law, that in all cases, where it becomes necessary, for the purposes of justice, that the true time when any legal proceeding took place should be ascertained, the fiction is not to prevail against the fact."—4 *Kent's Com.* 454. The doctrine laid down by the court below is, that the guardian in July, 1836, the time when the bill was filed against him to account, (there being no evidence that he was ever called on to account before that time,) by failing to account for his ward's effects *then*, by a legal fiction, committed waste of these effects more than three years before that time, and while Pye was security.

The testimony, the fact, makes the waste to take place long after Pye's discharge ; but fiction, more potent than truth, makes it occur before his discharge. The application of this fiction was indeed necessary in this particular case, not for the purpose of justice, but to reach Pye, the security.

5th. It was incumbent on the plaintiffs below to prove a breach of the bond by the guardian, and, in order to bind Pye, that this breach occurred while he was security.

The counsel for the plaintiffs below seem to have thought it necessary, in their declaration, to allege a breach of the bond while Pye was security ; and if necessary to make the allegation, it was necessary to prove it.—1 *Greenleaf's Ev.* 89.

6th. By the common law practice of pleading, when the defendant pleads a special plea in bar (as in this case) to the plaintiff's action, the plaintiff replies : in the present case, under the common law rule of pleading, the plaintiffs below would have been compelled to have filed their replication, alleging the waste by the guardian to have been committed before the 3d June, 1833, the date of Pye's discharge ; and on the trial would have been held to the proof of it.—1 *Chitt. Pl.* 599 ; *Tidd's Prac.* 636, 637 ; *Trimmier* vs. *Trail,* 2 *Bailey,* 484. In this

last case it was held, " *that the replication must show a liability existing before the discharge of the security.*"—See *also Gould's Plead.* 92, sec. 70, 71, 72.

By our statutes of 1799 and 1818, the case goes to the jury on the petition and process of plaintiff, and the answer of defendant alone.— *Prin. Dig.* 421, 442. But the common law is not altered, as to the proof required on the part of the plaintiff at the trial.

7th. The evidence introduced on the part of the plaintiffs below, on the trial, shows no waste of the effects of the ward by the guardian, *prior* to 3d June, 1833, the date of the discharge of the security. That evidence consisted of, the guardian's bond, the bill in equity against Bryant, filed by the plaintiffs below, in July, 1836, a decree thereon in favor of the plaintiffs against Bryant, for $1643 36 and a *fi. fa.* with a return *nulla bona* upon it by the sheriff, dated 19th Jan. 1839.

This record, introduced in evidence on the part of the plaintiffs below, furnishes *no proof* of waste by the guardian, before the 3d of June, 1833. It affords *no evidence* that a demand was made by any person on the guardian, *prior* to that time, for his ward's property; *no evidence* that the guardian before *that date* had converted a single dollar of his ward's effects to his own use, or that he had in any way mismanaged her property; *no evidence* that the ward had arrived at age, or that there was any person in existence before the date of the discharge of the security, who was authorized by law to make a demand upon the guardian, or to receive the property of the ward. On the contrary, the evidence shows that the marriage of the ward did not take place until some eighteen months after Pye's discharge, and that there was no demand made upon the guardian until after the marriage.

From aught that appears from the plaintiff's testimony, the property of the ward was *all* in the hands of the guardian, without injury or diminution, on the 3d June, 1833.

The decree itself is no evidence as to *the time* of the waste. It is only evidence that *at the date of the decree*, the guardian was indebted to the ward in the sum of $1643 36, and unaccounted for at *that time.* The return of *nulla bona* upon a *fi. fa.*, said to have been issued upon the decree made on the 19th of Jan. 1839, only goes to show that the guardian was indebted to his ward the amount of the decree, at *the time* it was made, and his failure to pay that decree, and establishes waste at *that time,* but at *no other time.*

As to the eighth ground of error :

The testimony of Vardeman was offered to prove that Bryant was solvent, subsequent to *the discharge* of the security. The testimony was competent to rebut the evidence of the plaintiff below of insolvency. If the absence of property on the 19th of Jan. 1839, the date of the return of *nulla bona*, was to be received as evidence of waste before the security was discharged, certainly the possession of property by Bryant, subsequent to the date of the discharge, and before the return of *nulla bona*, would be just as good evidence, to show he had not wasted his ward's effects before the discharge.

It was certainly good to rebut a fiction.

W. D. ALEXANDER, for the defendant in error, contended, in reply to the first ground taken in the assignment of error, that an order, making

the legal representative a party, was not necessary at common law, nor by the English statutes, nor by the statutes of Georgia, nor by any published rule of practice. At common law, a suit abated when the death of a party was suggested.

A *scire facias* is the creature of an English statute, which provides that parties shall be made by *scire facias*, and not by an order. The statute of Georgia provides that parties shall be made by *scire facias.*—2 *Tidd's Prac.* 1114, 1117 ; 1 *Ld. Ray.* 245 ; *Prin. Dig.* 422. An order is the will of the court, judicially expressed, and an entry on the bench docket constitutes such an order. The minutes of the court are not the acts of the court, but a mere memorandum, memorial, or record of those acts, and an entry on the docket, made by the court, is in point of grade testimony of equal dignity. There is no practical purpose for which such an order is required. It cannot be to complete the record, because the *scire facias* becomes a paper of record, and shows the change of parties, and makes the record as complete as in the case of original process, where the defendant is brought into court, and made a party without an order. It is a well-settled principle that a party cannot submit his rights to adjudication, and then, when the court has determined against him, except to the process, or take advantage of the absence of process. The legal representative appeared in court, and resisted the motion for a new trial, without making the exceptions.

To the second ground, Mr. A. replied, that the decree could only have been rendered against the defendant, *de bonis propriis.* It could operate against him in his individual, and not in his fiduciary, character. —2 *H.* and *M.* 26 ; 2 *Munf.* 325 ; 2 *Munf.* 421 ; 2 *Robinson's Prac.* 393.

To the third ground, he replied, that the provisions of the statute of Georgia, in relation to the admissibility of copy bonds, was cumulative. If the original could be obtained, it was certainly competent to found the action on it ; and as the foundation of the action, it became an office paper in the court where the action was pending. The loss of it being accounted for, a copy, established under our rules of practice, was competent testimony, and higher testimony than a certified copy ; because the latter would have been a copy of a copy.

To the fourth ground he replied, that the decree was *prima facie* evidence of a *devastavit*, and conclusive against the guardian as to the amount ; but did not preclude the security from looking into the decree, to see whether he was properly chargeable with the amount decreed.—1 *McC. R.* 379 ; 3 *McC.* 225.

To the fifth and sixth grounds, which involve the legal effect of the discharge, he replied, that the act of the Legislature was inferential in its terms, and in express language meant, " that upon failure to show cause, the court shall have power to discharge the security from his securityship, *and* compel the guardian to give new security, *or* his guardianship shall be revoked." Two acts are implied on the part of the guardian, before the security can be discharged : one, an act of omission, the other, an act of performance. He must fail to show cause, and must likewise give new security.

If he fails to give new security, then the court is thrown upon the alternative provided by the statute, that is, a revocation of the letters of guardianship, which leaves the liability of the security where the order

of revocation found it. Conceding the discharge to be regular, Mr. A. laid down the proposition, that it only released the security from *future*, and not from *past*, liabilities. He insisted that, in legal parlance, the word *liable* meant to be bound, to be answerable, and that, in this sense, the liability of the security commenced at the time of the execution of the bond; and that the proper and safe measure of liability was the amount received by the guardian *before* the order of discharge. So soon as the guardian received any part of the guardianship fund, to that extent the liability of the security immediately attached. In other words, the security was bound, or liable, until the guardian discharged his liability, by accounting for, and paying over, the amount which had come into his hands. The liability of the security did not necessarily imply a breach of the contract, or that a right of action had accrued before the discharge. His liability commenced with the execution of the bond, and its extent was ascertained by the amount received by the guardian *before* the order of discharge. In the case before the court, every dollar charged against the security, was received by the guardian *before* the order of discharge was made. The liability of the security attached and continued, unless the guardian has shown that he has discharged the same, by accounting, or by making a legal and proper application of the amount received. He has failed to do this. A liability was, therefore, incurred by the security before the discharge, and could not be affected by it without impairing the obligation of the contract.

The decree and *fi. fa.*, with the return of *nulla bona*, established the *devastavit* on the part of the guardian, and the amount of that *devastavit*. The security may look into the decree, to ascertain whether any of the items going to make up the amount of the decree were *received* by the guardian *after* the order of discharge was made. It was immaterial whether the breach of the contract occurred, or a right of action accrued, *before* or *after* the discharge. If it appears that the amount was *received* by the guardian before the discharge, and a *devastavit* has been established by a decree, and a *default*, by return of *nulla bona*, it is sufficient to charge the security.

Mr. A. contended, that he had seen no reported case in which the plaintiff was required to prove actual waste by the guardian, or to prove *affirmatively* any act of malfeasance or nonfeasance on the part of the guardian, before the order of discharge, other than the reception of the fund by the guardian, and his subsequent failure to account. In support and in illustration of these views, Mr. A. relied on the cases of *Shelton* vs. *Cureton*, ordinary, 3 *McC. Rep.* 413; *James Commissioner* vs. *Malone et al.*, 1 *Bailey's Rep.* 334; *Trimmier Ordinary* vs. *Trail*, 2 *Bailey's Rep.* 481; *Ordinary* vs. *Bigham and Hudson*, 2 *Hill's Rep.* 512; *Alexander* vs. *Bullard and Doby*, *Rice Eq. Rep.* 23; *Field* vs. *Pelot*, 1 *McMullan's Eq. Rep.* 370.

To the 7th ground he replied, that time in this case was not a material allegation in the declaration, (1 *Chitty's Plead.* 3 *J. R.* 43,) and that the declaration contained, without relation to that allegation, a sufficient cause of action. The declaration was framed with reference to the doctrine of relation, which is a legal fiction, resorted to for the purpose of accomplishing the ends of justice.

To the 8th ground he replied, that the evidence was inadmissible, be-

cause it proved nothing ; and that the return of *nulla bona* was higher testimony, and conclusive of the insolvency of the guardian. He contended, that substantial justice had been done between the parties by the verdict ; and that when it appeared that substantial justice had been done, a new trial should not be granted ; and that this was a sound, safe, and sensible rule.

O. WARNER, in reply, concluded, in behalf of the plaintiffs in error.

His Honor HIRAM WARNER, one of the judges of the Supreme Court, having been of counsel in the court below in this cause, gave no opinion.

*By the Court*—NISBET, Judge.

The bill of exceptions in this case recites, that Wiley Bryant was, on the 9th day of January, 1826, by the Court of Ordinary of Putnam county, appointed guardian of Orra Ann Weathers, a minor; Jesse Pye and Littleberry Perdew were the securities on his bond. Perdew died before any of the proceedings on this record were instituted. On the 3d day of June, 1833, Jesse Pye, upon his application, under the act of the Legislature of Georgia, was discharged by the Court of Ordinary of Putnam county from his suretyship aforesaid. About eighteen months after Pye's discharge, the minor, Orra Ann Weathers, intermarried with Littleberry Owens. On the 13th July, 1836, Littleberry Owens and his wife filed a bill against Wiley Bryant, calling upon him to account as guardian; and, afterwards, to wit, in the year 1838, a decree was had in their favor against him, before the Superior Court of Merriwether county, for the sum of $1,643 36, and cost of suit; upon which decree execution issued against Wiley Bryant, personally, and was returned, with the entry of *nulla bona*. In January, 1839, the present suit was brought upon the guardian's bond, to recover of Pye, the surety, the amount of said decree. In addition to the general breach assigned, the plaintiffs also set forth, as special breaches, the insolvency of the guardian, and the proceedings on the bill in equity, viz., the decree, and the return of *nulla bona* on the *fi. fa.* The defendant, Pye, plead his discharge by the Court of Ordinary of Putnam county, anterior to the decree rendered against his principal.

Upon the first trial of the cause, judgment was confessed for the plaintiffs, and an appeal entered by the defendants; and on the appeal trial, a verdict was had in favor of the defendants. A new trial was then moved by the plaintiffs. Pending the rule *nisi*, for a new trial, Pye died, and *scire facias* was sued out to make his representative a party. The *sci. fa.* was served on Allen Beall, executor of Jesse Pye, deceased, and returned. Upon the return of the *sci. fa.* a verbal motion was made, to make Beal, executor, a party to the cause, and he was accordingly made a party, and the only evidence of the judgment of the court making him a party, which the record affords, is an entry on the bench docket in these words, to wit: "parties made." Afterwards counsel for the executor of Pye appeared, and resisted the granting a new trial. A new trial was, however, granted, and when the cause

was thereafter called for trial, Beall, executor of Pye, objected, that he had not been made a party to the suit regularly ; because the judgment of the court upon the return of the *sci. fa.* was not entered upon the minutes ; or, in other words, it did not judicially appear that he had been made a party at all.    This objection was overruled, and the trial proceeded.    Upon the trial, it appeared, from the statements of the clerk of the court, and of counsel for the plaintiffs, that the bond sued on had been filed in the office of that court, and was lost.    Whereupon the plaintiffs were permitted to establish, under the rule of court, a copy of said bond instanter.    This copy bond being then tendered in evidence, was objected to by the defendant, and admitted by the court. The record of the proceedings in equity against Wiley Bryant, including the decree, was then read to the jury by counsel for the plaintiffs.    The execution issued against Wiley Bryant individually, being tendered, was demurred to by the defendant, and admitted by the court.

The defendant's counsel, the plaintiffs having closed, read in evidence the judgment of the Court of Ordinary, of Putnam county, discharging Pye from his suretyship, and offered a witness to prove that Bryant had in possession considerable property, and was in fact solvent, after the discharge of his surety ; which testimony being objected to by the plaintiffs, was excluded by the court.

The court then charged the jury, and verdict was rendered for the plaintiffs for the full amount of the decree.    Whereupon the defendant moved a new trial, upon nine several grounds, all of which were overruled by the court, and a new trial refused.    The error assigned is, the refusal of the court to grant the new trial upon each and all the points made in the rule.    We make this statement of the facts, in consecutive order ; because necessary, as we believe, to an easy comprehension of the opinions in this important cause we now pronounce.

The *first* ground taken in the rule for a new trial is, " there was no order of the court, making the legal representative of Jesse Pye, deceased, a party to the suit on the guardian's bond, except an entry on the motion, docket of ' parties made.' "    The statute of 1799 authorizes, in case of the death of a party defendant, his representative to be made a party by *scire facias.*

In the case of *Alfred P. Reed,* plaintiff in error, vs. *James Sullivan,* tried at Americus in July last, this court determined that a *scire facias* is a judicial writ, but because it may be plead to, it is in the nature of an action.—*Tidd's Prac.* 1090 ; *Coke Lit.* 290, *b. ; 2 Wils.* 251.

In England, at common law, the death of a sole plaintiff or defendant, at any time before final judgment, would have abated the suit.— *Tidd's Prac.* 1116.    These parties are made by statutes.—17 *Chas.* 2, and 8 and 9 *William* 3.

These statutes are not repugnant to our act of '99 upon the same subject, so far at least as relates to the right of the representative to appear and show cause against the writ, when in default, so far as relates to the power of the court to proceed against him, they are not in conflict with our act of 1799.    By the statute, 8 and 9 *William* 3, the right of answering the *sci. fa.* is given to the representative of a deceased defendant ; and if, being warned, he fail to show cause, a writ of inquiry of damages is awarded against him.—*Tidd's Prac.* 1117.    So,

here, under our own statute, and also so far as it does not repeal them, under the English statutes, the representative may show cause against being made a party (for example, he may show that twelve months have not expired); and if he fails to appear, or, appearing, fails to show cause—being in default—the court will order the cause to proceed against him. Now, the right to plead to the *scire facias*, of necessity implies the power of the court to pronounce judgment upon the issue made, and if the party being entitled to plead makes default, the power—nay, the duty of the court, to give judgment, as in other cases of default—is conclusively demonstrated. We are, therefore, of the opinion that, upon the return of the *scire facias*, a judgment of the court must be pronounced. The next inquiry is, what is the evidence of the judgment of the court? We think the record is the only evidence of what the judgment of the court is; the record is tried by inspection, and, if the judgment does not there appear, the conclusion of law is, that none has been rendered. The record in this case does not show that the representative of Jesse Pye, deceased, was made a party, by judgment of the court upon the return of the *scire facias*. Judicially, therefore, we infer that he has not been made a party; *unless* the entry of "parties made" is part of the record. We think the motion docket is no book of minutes. The entry of "parties made" is not a judgment, and if it was, it ought to appear on the minutes. The motion docket is but a memorandum book, and its entries only memoranda, kept for the convenience of the judge, in conducting the business of the court. By the 34th sec. of the act of 1799, (*Prin.* 428,) it is made the duty of the clerks to keep regular and fair minutes of all the proceedings in their courts. The record of this cause does not show that the clerk has kept regular and fair minutes of all the proceedings of the court below; but, on the contrary, a very material item in the proceedings of the court, upon the supposition that this judgment was rendered, has been omitted. The same section of the act of '99 makes it the duty of the presiding judge to sign the minutes daily. This obligation to *sign*, if it means anything, means that he shall examine the minutes, and see to it that they contain, and correctly report, all the proceedings of the court, in every case. And his signature is his official attestation that the minutes are both correct and complete. Can we therefore—could any court—admit anything to be a part of the proceedings in this cause, not thus certified by the presiding judge? The judge does not sign his motion docket, but his minutes. In England it is necessary that the record should be drawn up in form, before a copy of it can be given in evidence. *A judgment paper, signed by the officer, is not evidence of a judgment.*—*Tidd's Prac.* 943; *Buller N. P.*, 228.

It concerns judicial responsibility, the rights of property, of life, liberty, and character, that the records of judicial action should be complete, correct and permanent; and further, that they be *attested* to be records, in authoritative form. We have no hesitation in saying, that the court erred in refusing the rule on the first ground.

The *second* ground for the new trial is, that the court erred in permitting the execution against Wiley Bryant, in his individual capacity, to be read in evidence, as proof of waste on his part as guardian. As yet, we express no opinion as to how far this execution, with a return of

*nulla bona*, will go, under the circumstances of this case, to establish waste ; we shall reserve that subject for other heads of error taken in this cause.   We do not perceive that the fact of its being against Bryant, the guardian, in his individual character, is a well-founded objection to its admissibility.

The bill in equity was brought against Bryant as guardian, charging a *devastavit*, and seeking to make him liable in his individual, and not in his representative, character ; the decree was properly rendered against him personally, and the execution very properly followed the decree.   We therefore think the presiding judge did not err in refusing the rule on this ground.

The *third* ground for a new trial is, that the court erred in permitting a copy of the guardian's bond, taken by the Court of Ordinary, of Putnam county, to be established *instanter* as an office paper, and to be read in evidence on the trial of the cause.

The 49th rule of court (*Hotchkiss*, 949) provides that upon the loss of any original declaration, plea, indictment, or other *office papers*, a copy of the same shall be established *instanter*.   It was under this rule, that the court below allowed the copy of the bond to be established.   Does the rule contemplate a guardian's bond ?   Is a guardian's bond an office paper ?   We do not think that it is an office paper.

This rule was no doubt originally designed to embrace the pleadings in the case, and such other papers as belong to the office of the clerk of the superior and inferior courts, as papers of file.   We are aware that it has been extended to notes and other papers, the foundation of pending actions, before final judgment thereon.   The private papers of a party are not office papers ; they are not deposited in office by the law.   If filed in office voluntarily, that fact does not make them office papers.   They are still the property of the depositor, and may be withdrawn by him.   After final judgment on a note, bond, or bill, it may be conceded that they become office papers, and cannot be withdrawn but by an order of the court.   A guardian's or administrator's bond, however, occupies very different ground from these.   They are not the property of the parties ; they belong to the Ordinary ; they are the office papers of the Ordinary, placed of file there by the law.—*Prin.* 244, 245. There they are to remain.   How the plaintiffs in this cause became possessed of the original, does not appear.   They are not entitled to that possession, and the possession does not make the bond the property of the plaintiffs ; if it did, it is still not an office paper of the Superior Court. The testimony shows that it had been in the office of the Superior Court, and was lost ; its having been in that office does not make it an office paper.

The testimony does not show that application to the Court of Ordinary of Putnam county was made for a certified copy, before the copy was established *instanter*.   That is the legal depository of this bond. From aught that appears, it was there.   But, if lost, the mode to establish a copy, was by rule and notice, &c.   This is an official bond, and is on that account an office paper of the court which takes it, and to which it is made payable.   Guardian's and administrator's bonds, in many instances, are intended to protect the rights, not alone of one, but of many ; as in case of several wards of the same guardian, or all the distributees of the same estate.   It cannot, therefore, be rightfully

controlled by any one ; very properly, therefore, the Court of Ordinary is made the custodier. The act of December, 1823, in view of these things, makes a certified copy of these bonds evidence ; notwithstanding this act, the original, if presented, is the best evidence ; but it does not follow, that because the original is evidence, the act of 1823 being cumulative, therefore a copy established *instanter*, is the next best evidence. A certified copy, we think, was, in this case, the next best evidence to the original ; and if that (the original) was lost, a copy could not be established *instanter ;* and for these reasons we think the court erred in refusing the rule on the third ground.

I shall consider the 4th, 5th, and 6th grounds for a new trial, specified in the rule, together, as they present only different heads of a general subject. In these specifications are involved the inquiries, whether the decree, against the guardian generally, is conclusive against his surety ? Whether the facts of effects belonging to the ward, having come into the possession of the guardian before the discharge of the surety, is of itself such evidence of waste as will charge the surety ? How far the discharge of a surety, by the Court of Ordinary, upon his own application, under our statute, releases him from liability on his bond ? And whether a decree against the principal, rendered long after his discharge, is evidence of waste against his surety ? This, I believe, is a correct summary of the questions raised in the 4th, 5th, and 6th specifications in the rule. The specifications themselves need not be here repeated. The most of these questions have been decided by this court —see the case of *Woods* vs. *Vason*, decided at Milledgeville, in May last, *ante*, p. 84. They were reviewed in that case, by the court, after very extended and profound argument. The case now under review has been also ably argued, and after this second hearing, of substantially the same points, we find no cause to change the judgment pronounced in *Woods* vs. *Vason.* The first query, to wit, whether the decree against the guardian is conclusive against his surety, in an action on the bond, we shall consider, for the present, wholly irrespective of the discharge. Is the surety estopped by it, or may he look into it ? Is it conclusive, or only *prima facie* evidence of waste ? In the judgment of this court, it is only *prima facie* evidence of a *devastavit.* The surety, to use again the language of some of the courts, may *look into it.* It becomes important to determine what is meant by this phraseology.

In *Joyner* vs. *Cooper*, 2 *Bailey*, 199, the court says, that the surety may look into the decree, " in order to see that he is charged only for the accounts or duties, the faithful discharge or performance of which he has undertaken to guaranty." We are unwilling to limit the rights of the surety to a *looking into the decree*, as in that case defined. We believe that the decree is evidence against the surety, until he shall rebut it by counter-testimony ; and that he is permitted to inquire, *ab origine*, into the justice of the decree. He is not restricted to the inquiry, whether the decree charges him only for such accounts or duties, the faithful discharge or performance of which he has guarantied. But he may make inquisition into the correctness of those accounts, or into the faithful performance of those duties ; or he may set up any defence which the principal could set up against the rendition of the decree ; or which he could have set up, had he himself been a party to the proceed-

ing. We are satisfied that the rule thus laid down is sustained by the authorities, and it is clearly founded in equity. Is it not enough that a decree "*inter alias*" is *prima facie* evidence against a party having no notice? In *Carmack* vs. *Commonwealth, for the use, &c.,* 5 *Binney,* 184, after judgment in trover against a sheriff, who had levied an execution against A upon the property of B, in an action against the sheriff and his sureties, the court determined that the sureties were not liable for the amount of the judgment in trover, in consequence of their bond. The suit in this case was *scire facias,* to which the sheriff, as well as the sureties, was a party.

Tilghman, C. J., in delivering the opinion of the court, holds this strong language: "It is contended, however, that inasmuch as the sheriff was the defendant in the action of trover, he certainly is bound by the judgment in it, and, therefore, the other defendants, in this joint action, must be bound also. This is a very subtle attempt to cut off the sureties from all possibility of being heard; but it is too unreasonable to be sanctioned by law." This reasoning applies to the case at this bar, with all its force. A decree is first had against Bryant, the guardian, and afterwards a joint action is brought against him and his sureties on their bond; and counsel for the plaintiff in error contends, that, inasmuch as the decree is binding upon the guardian, it is also binding upon the other defendant. We reply, as the court in Pennsylvania did, this is a very subtle attempt to cut off the sureties from all possibility of being heard, and is too unreasonable to be sanctioned by law. In *Dawes et al* vs. *Shea et al,* 15 *Mass. Rep.* 7, it was determined that where judgment had passed against an administrator, in an action barred by the statute of limitations, in an action against the sureties on his bond, they were not bound by the judgment, but might plead the statute of limitations. So also in the *Ordinary* vs. *Condy,* reported in 2 *Hill,* 313, it was decided: that a judgment or decree against an administrator, is *prima facie* evidence against his surety, but not conclusive; and in an action against the surety on the administration bond, he may give in evidence to show that a prior decree against the administrator was, in fact, for his personal debts. In this case, the authorities, English and American, (in an exceedingly able opinion,) came under the review of Chancellor Harper. The result of that review was as above stated.

The surety now before this court was not a party to this suit in equity; he had no notice, so far as the record discloses, of its pendency; of course he was not heard in his own defence in that suit. It is contrary to natural justice, and also to all the analogies of the law, that one should be estopped by a decree to which he was not a party, and of which he had no notice. Such a rule would most effectually oust the security of his day in court. His rights would, by such a rule, depend upon the diligence or the fidelity of others. The principal might collude with the complainant, and permit an iniquitous decree to be rendered against himself, in order to charge his surety. Human nature is, unfortunately, not too good for that; or his carelessness or neglect might work irreparable injury to the surety. The reason for our opinion is as strong as the authority is conclusive.

The general rule is, that no one is bound by a judgment or decree,

but parties and privies.—*Duchess of Kingston's case*, 20 *State trials*, 538. The general meaning of *privies* includes those who claim under, or in the right of parties. There is no such privity between a surety and his principal, as will take him out of the general rule. The authorities relied upon on this point, by counsel for defendant in error, are 1 *McCord R.* 379, and 3 *McCord R.* 225. Upon an examination, I find that the first of these cases only establishes the position, that a judgment against an administrator is conclusive against him, in an action founded on that judgment, suggesting a *devastavit*. The rights of sureties were in no way involved in that case. The other case, in 3 *McCord*, I state, on the authority of Chancellor Harper, only decided, that, although the surety had not been summoned before the Ordinary, the decree against the principal was *prima facie* evidence against him. The case of *Cureton* vs. *Shelton*, (3 *McCord R.* 412,) has been more generally relied upon, in South Carolina, than any other, to sustain the position that the decree is conclusive. But see the view taken of this case by Chancellor Harper, in the *Ordinary* vs. *Condy*.

By the act of the Legislature, passed in 1805, (*Prin. Dig.* 237,) whenever securities to executors, administrators, or guardians, conceive themselves to be in danger of suffering thereby, and petition the Court of Ordinary for relief, the said court shall cause the executor, administrator, or guardian, to be summoned to appear before them, at the next sitting thereof; and shall make such order, and give such relief in the case, by counter-security, or otherwise, as to said court shall seem just and equitable. Under this act, Jesse Pye, the surety of Bryant, applied to, and was discharged by the Court of Ordinary of Putnam county. That court passed, at the same time, an order revoking the letters of Bryant, the guardian, unless, on or before the next term of said court, he shall give new bond and security. Whether the new bond was given or not, the record does not inform us.

It is not questioned, that, in this act, the Legislature clothed the Court of Ordinary with power to discharge the surety to a guardian's bond; they are authorized by the act to give relief to the surety, by counter-security, or otherwise, as to them shall seem just and equitable.

The law presumes that they will give relief in such way as will not injure the ward; it is their duty to protect the rights of the ward. This they can do in several ways; they can discharge the surety, taking new security for the further execution of the trust; or they can require the guardian to settle with a new guardian, before granting a discharge. In case they do, however, as they did in this case, discharge the security, by their judgment, from what is he released? We think, only from future liability. So far as he is fixed with liability, at the time of the discharge, *that* continues. No power on earth can release him from existing liability. If new security is given, the new surety is bound for the future management of the trust, and also bound equally with the old sureties, for past management of the trust. In South Carolina, where there is a statute almost identical with our act of 1805, there may be found *dicta*, denying the power of the Court of Ordinary, or of Chancery, to dissolve the contract of suretyship, as to future liability. The decisions of the courts have, however, recognized the power; and determined the effect of a discharge to be as we have just stated it.—2 *Bailey's R.* 480; 2 *McCord's*

*C. R.* 55; 1 *Hill's Ch. R.* 414.   See *Woods* vs. *Vason*, determined by this court, *ante*, p. 84.

As the record of the Ordinary in this case, does not show that new bond and security was given, in pursuance of the order *nisi*, we infer that none was given, and that the guardianship was revoked. We have seen that, generally, in cases where there is no discharge of the sureties, a judgment or decree against the guardian, is *prima facie* evidence of a *devastavit* in an action against them on their bond. In this case, the surety was discharged in June, 1833, and the decree against the guardian was rendered in 1838, about five years thereafter. We are now to inquire, what evidence does this decree, and the execution issued upon it, with a return of *nulla bona*, furnish of a *devastavit*, so as to charge the sureties? The decree is evidence of waste by the guardian, and the return of *nulla bona*, on the *fi. fa.*, is evidence of insolvency. But at what time do the decree and the *fi. fa.* establish the *devastavit*? At the date of the decree, five years after the surety was discharged. Does the decree, then, prove anything against the surety? By itself, we answer, nothing; because he is liable only for the waste committed before his discharge. We are not prepared to say, that a state of facts might not exist, which would make this decree evidence of waste, committed anterior to the discharge. If there are also, in evidence, facts or circumstances which directly, or inferentially, connect the waste established by the decree, with any maladministration, before the discharge of the surety, it ought to be sent to the jury, and the amount of its evidence weighed by them. For example, we are not prepared to say, that the marriage or maturity of the ward, before the discharge, (being, in that case, a person capable of settling with the guardian, and of giving an acquittance,) together with the subsequent decree, in favor of the ward, would not establish a *devastavit* before the discharge, and make the surety liable.

For myself, I believe there is no doubt of it. The fact of the guardian's having *received* the effects of the ward before the release of the surety, together with the decree rendered after the release, do not, together, make out a *devastavit*; for the reason, as we hope to show, that the receipts of the effects alone, before the release, is no evidence whatever of maladministration. The decree cannot, in this case, relate back to the time of the receipt of the effects, as held by the presiding judge. If, as we hold, the discharged surety is only liable for maladministration before his release, that is *a fact* which the plaintiffs must prove, either directly or circumstantially.

A relation, *in fact*, may be established between the decree and the receipt of the effects. In this case, in our judgment, that *legal relation*, which is a fiction, does not exist. This fiction is adopted in certain cases, where justice requires a resort to it; it is founded in necessity, *ut res magis valeat quam pereat.* For example, if a *feme sole* makes a deed, and it is delivered as an *escrow*, and marries before it is delivered to the grantee, its delivery to the grantee relates back to the first delivery. The marriage, intervening the first and second delivery, is the necessity which creates the relation. The doctrine of relation, thus explained, cannot obtain here; in this case, the rules of evidence, and the rights of the surety, cannot, without violence, be made to yield to a legal fiction. The right of the plaintiffs to recover here, depends upon an affirmative fact, to wit: a waste by the guardian, before the release of the surety.

Bryant, Guardian, &c. and Beall, Ex'r. of Pye, vs. Owen and Wife.

The law of pleading and the rules of evidence cast the *onus* upon them. As to the law of relation, see *Kent's Com.* vol. 4, p. 454 ; 1 *Johns. Ch. R.* 297 ; *Perkin's*, sec. 138 ; 3 *Coke*, 35, *b*, 36, *a ; 3 B. and C.* 317.

It was held by the able judge who presided on the trial of this cause, "that no other evidence of waste by the guardian was necessary, on the part of the plaintiffs, to charge the surety, than the reception of the effects of the ward by the guardian, before the discharge of the surety ; provided he had failed to pay over and account for the same." This question has often been before the courts of South Carolina ; and notwithstanding the acknowledged learning of her judges, it is not a very easy matter to determine, from the books, how it is settled in that State. There are decisions, in fact, on both sides. I shall not undertake an analysis of them, because this has been undertaken already, by this court, in Woods and Vason. We differ with the court below, and hold, that the reception of the effects of the ward, unaccounted for, is not, *per se*, waste.

The condition of the guardian's bond is, that the guardian do well and truly *demean himself*, as guardian, agreeably to *his letters* of guardianship, and agreeably *to law.* Under his contract with the Court of Ordinary, the surety undertakes that his principal will demean himself, (that is, execute his trust,) *agreeably* to the instructions contained in his letters of guardianship, and *agreeably to law.* Now, we assume that any one, feeling aggrieved, and seeking redress out of the surety upon his bond, is held to show a breach of the bond ; that is to say, he is held to show that the guardian has not demeaned himself agreeably to his letters of guardianship and agreeably to law. One of the directions which the Ordinary gives to the guardian, in his letters, is, "that you inquire into and take charge of his (the ward's) estate." By the commission, then, under which he acts, it is made his duty to "inquire into and take charge of his ward's estate ;" that is, to do that, the doing of which is sought to be made, in this cause, a devastavit. The requirements of the bond are in exact accordance with the instructions of the letters ; a part of the condition of the bond is, that the guardian demean himself agreeably to his letters of guardianship. We are aware that the instructions of the letters are in subordination to the law. But the instructions of the letters, in this particular, are but the requirements of the law. The law also makes it his duty to inquire into and take charge of the estate of his ward ; to *receive* and *keep* his effects. Nay, further, if he fails to do this, he is guilty of devastavit, which will forfeit the condition of his bond, and charge his sureties.

It is his duty, we say, to collect in, and take charge of, the effects of his ward ; the duties of guardian and executor, in this regard, are the same. This will not be controverted. Indeed, if the guardian is not appointed for this purpose, then the appointment of a guardian at all, for the management of the estate of a minor, is an act of redeemless folly.— *Williams' Ex'rs* 718, 719. If an executor or administrator unduly delay to bring an action, until it is barred by the statute of limitations, he becomes personally liable, (*Williams' Ex'rs* 718 ; 12 *Mod.* 573,) and such delay will amount to a devastavit.— *Williams' Ex'rs* 1284 ; 12 *Mod.* 573.

By the laws of Georgia, guardians are required to make an inventory of the effects of their wards, and return it to the Court of Ordinary. Moreover, the statute (12 *Char.* 2) makes it the duty of guardians to take

the *custody, tuition and management of the goods, chattels and personal estate* of children-committed to their care. This statute is of force in Georgia.—*Schley's Dig.* 243.

We think, then, it is established by these views, and the authorities which sustain them, that it is the duty of the guardian to receive the effects of the ward, and if he fails to collect and receive them, he commits waste. If these things are so, can the receipt of the effects be evidence of waste at the same time? The thing is not only unreasonable, but absurd. But it is said, that it is not the receipt, *per se*, of effects which will charge this surety, but not accounting and paying over, up to the time of the discharge, will charge him. In other words, the plaintiff in the action on the bond, having shown that effects came to the hands of the guardian, before the release of the surety, he will be chargeable, unless *he* can show that they have been paid over, thus shifting the onus. But if, as we trust has been demonstrated, the mere receipt of effects is in no sense waste, then the plaintiffs have, at the time when they claim that the onus is shifted, established no waste. They have shown no breach of the bond ; and this, we contend, is to be affirmatively proven by the plaintiffs. Now, the keeping the effects, or having them on hand at the time of the release, is no breach ; for it is as much the duty of the guardian to keep the effects as to receive them, *unless*—and here lies the true distinction in these cases—he keeps the effects, or holds them at the time the surety is discharged, under circumstances which amount to a dereliction of duty ; under circumstances which show a violation of his trust. These circumstances, we hold, it is incumbent upon the plaintiffs to prove ; they must show a breach of the bond. It would be impossible to say what would be a safe general rule upon this subject. We undertake to establish none. Each case must be, in some degree, controlled by the circumstances which attend it.

We will say, however, that in cases where the receipt of effects by the guardian is proven, and a demand is made for a settlement, anterior to the discharge of the surety, by any person entitled to receive and receipt for such effects, the surety will be liable. To this extent go the following cases : *Vaughan* vs. *Evans*, 1 *Hill's Ch. Rep.* 414 ; *Townsend and Gordon* vs. *Everett*, 6 *Ala. Rep. N. S.* 607 ; *the Governor* vs. *Robbins*, 7 *Ala. R. N. S.* 79 ; *the Ex'ors. of Moore* vs. *the Treasurer*, 1 *Nott and McCord*, 214 ; *Wright* vs. *Hamilton*, 2 *Bailey*, 51.

Any act of maladministration, before the release—such as a use of the effects for private purposes, investment of funds contrary to law, gross neglect in the management of the ward's estate—would, of course, charge the surety. Insolvency anterior to the release would charge the surety ; we are inclined to the opinion that slight evidence of waste will be sufficient to charge him.

And, as before intimated, I should hold, that if the ward has married, or attained to maturity, before the discharge, proof of the fact would be sufficient, in the first instance, for the plaintiffs. For whilst it is the duty of the guardian to receive the effects of his ward, and to keep them, it is his duty to keep them only until his ward is legally entitled to receive them : proof that there are persons *in esse* before the discharge, capable, in law, of giving the guardian an acquittance, ought, it appears to me, to put the surety upon showing that he had paid over the effects to such

persons, or otherwise relieving, against the presumption of a devastavit. It is true, however, that the case of *Vaughan* vs. *Evans*, and other cases, under such circumstances, make a demand necessary. It only remains to apply these principles to the case at bar. Up to the time of Jesse Pye's discharge, and long afterwards, by the Ordinary of Putnam county, the ward of his principal, Orra Ann Weathers, was unmarried and under age ; no acts of waste were proven before that discharge ; before that time there was no person *in esse* authorized to make a demand, nor does it appear from the record but that, at the date of the discharge, the guardian was solvent. The only evidence of waste, disclosed by the record, is the receipt of effects, before the discharge of the surety, by the guardian, and the decree rendered against the guardian, some five years thereafter, with the return on the execution issued on the decree of "*nulla bona.*" It is, therefore, the judgment of this court, that the presiding judge erred in refusing the rule for a new trial on the 4th, 5th and 6th grounds.

The 7th ground insisted upon for a new trial is, that the breaches assigned in the plaintiff's writ are anterior to the discharge, and there is no evidence to prove them but the record of a decree upon a suit instituted long after the discharge ; that is to say, as we understand this specification, the *allegata* and the *probata* do not correspond. In discussing the previous assignments of error, we have laid down principles which govern this. If, as we have argued, the decree in this case is of itself no evidence of waste, the doctrine of relation not applying ; and if, as we hold, the receipt and keeping the effects before the discharge by the guardian are not evidence, under the circumstances of this case, of waste ; then, it is true, there is no proof of the breaches alleged, anterior to the discharge ; and the proof does not sustain the allegations of the writ, and there ought not to have been a verdict for the plaintiffs.

The eighth error complained of is, that the court rejected the testimony of a witness, who was offered by the defendant to prove that Bryant, the guardian, was solvent subsequent to the discharge of the security. The court below having admitted the execution against Bryant, with the entry of *nulla bona*, to prove his insolvency, we think this testimony ought to have been admitted in rebuttal.

The ninth ground, to wit, that the verdict was contrary to both law and evidence, is added, as we suppose, as an expletive, to round off the body of the defendant's complainings, and needs, in this case, no very special notice.

We therefore reverse the decisions of the court below, upon all the grounds taken on the rule for a new trial, except the second.